Judge Pryor, Judge Newsom, and I are happy to welcome you to this sitting for one of our capital cases. You're familiar with the lighting system. When the yellow light goes on, that means that your time is drawing to a close so you can begin to wrap up. If we take you beyond the red light, don't worry about it. Just keep going with us. The case today is number 22-11040, Richard Sealey v. Warden of the Georgia Diagnostic and Classification Prison. Mr. Potek. Good afternoon, your honors. May it please the court. The requirement in section 22-54A of the AEDPA that a hedious petition must challenge the validity of the prisoner's custody, that is, conviction or sentence, is jurisdictional, not merely an act. And everything else here flows from that. Because of that, when the district court erroneously held that Mr. Sealey's eighth amendment claim challenged only Georgia's execution protocols and procedures, not his death sentence, it necessarily also held that it lacked the power or authority, that is, that it lacked jurisdiction, to hear the claim at all. Can I ask you a couple of questions just for me to try to get my head around Mr. Sealey's claim? Yes, your honor. Okay. There are three sequential questions, so I'll start from the broadest and go narrow. Okay, so bear with me. Is Mr. Sealey's claim that he can never be executed? Mr. Sealey's claim is that Georgia has proven that it cannot adequately or constitutionally carry out a death sentence. Okay, that's a good answer for you as an advocate on behalf of Mr. Sealey, but that doesn't answer my question. So if tomorrow, hypothetical, if tomorrow the world came up with a pill that allowed a person to be put to death and it was universally agreed that there was no pain, it would be like taking a sleeping pill. Is it your position that Mr. Sealey could not be executed pursuant to that method? So I think the way the claim is pled is that that's correct. Now that is a matter that the district court could assess and should assess in the first instance. And if it's true and all scientists agree that there would be no pain whatsoever, then frankly it would be a losing claim. But it would still be a habeas claim that should be weighed and assessed based on a full record in the first instance by the district court. Your claim, so two more and then I'll let Judge Noosa jump in. Is your claim that Georgia cannot execute Mr. Sealey because it has lethal injection, period, as its protocol, no matter how the protocol works or how it's been carried out in the past? So yeah, I think the claim, and if I can direct the court to Docket Entry 47, page 286, the ultimate thrust of the claim, the punchline, if you will, is that Georgia's recent history, and this was 10 years ago now, but the recent history has proven that Georgia cannot constitutionally carry out a death sentence. And that goes, there are multiple… Because of its lethal injection protocol. Because of the, and it details this a bit, because of the illegal misconduct and misdeath, and so its history, not… That doesn't sound like a flat-out bar argument to me. So I think… For example, if your contention was, and to put it into perspective, think about a different mode of execution. If your contention was that in today's day and age, the gas chamber was completely barred as cruel and unusual punishment by the Eighth Amendment, I could understand that. Your claim, at least to me, seems to be a little bit of a hybrid of never, or not under these circumstances, not with this history. And that's my last question to you, and then I'll let others take over. So I think that's right. And in some sense, I think it's a little broader that, you know, what the petition alleges and what the pleading suggests is that Georgia's misconduct goes beyond a particular protocol and has transcended different, even the period that the pleadings refer to go multiple protocols. And so I think the claim is, and it is, it's a little nuanced there, but I think the claim goes beyond a particular protocol or even a particular method to suggest that Georgia has proven itself incapable of constitutionally executing someone. And so that's what tips it fully into the habeas side of the dividing line, is we're not taking issue with a… This isn't a tweak. This isn't an upgrade request. This is not a 1983. It is a kind of full, broad attack on Georgia's ability to implement a death sentence. And, you know, consistent with the Supreme Court, many, many decades of Supreme Court case law, starting, you know, from Gomez and Lonshar through Nelson and Hill and all the way through Nance, the court has accepted and acknowledged, sometimes implicitly and sometimes explicitly, that there is a role for some method of execution of Eighth Amendment challenges in habeas. And we would suggest that this is the upshot of Nance, really, that anything short of a claim that you cannot execute me at all under any circumstances is Section 1983. So I don't know that I would go quite all the way there. But I think my takeaway from Nance is that it really focuses us on the requested release. And so, you know, it says, does the release take the execution out of the state's control? And so, you know, I think there is some truth there. But I think that's really what the court trains, you know, petitioners and federal courts' attention on is to look at that requested release. And that kind of defines whether or not you're a 1983 claim or a habeas claim. So does your then – because I've taken account of the petition and the supporting brief, and as Judge Jordan suggests, there's kind of like plenty to go around, like plenty for everybody. You've got, I think, your strongest positions that this is somehow like a frontal attack on execution itself are the – frankly like the subject heading. And then the relief where you say habeas relief from the imposition of an unconstitutional sentence or something like that. But in fairness, everything in between sounds to me like protocol and procedure stuff. And so, I mean, is that the kind of thing? Like whatever we're going to call this motion, whether it's a 60B or something else, if it's a 60B, we typically review those for abuse of discretion. Is this the sort of thing to which we would defer to the district court about how to make sense of these kind of schizophrenic pleadings? So let me unpack that. Let me first turn to the question, and then I do want to address the 60B argument as well. So, you know, the pleadings and the briefings do detail numerous instances of, again, misconduct, missteps, deficiencies with the protocol, procedures, statutory scheme. But I think it's very clear, and again, this is where the heading and the kind of sum up is significant, is that the claim is not addressed to any one of those specific things. And this isn't a claim like in Bays where, you know, they took very specific issue with the particular, you know, tubing. This isn't like a tweak or a really taking issue with any one in particular of those deficiencies, missteps, misconduct. It is kind of a total package. And so I completely agree that the briefing and pleading do detail numerous instances that we take issue with, whether it's misconduct or otherwise. But taken as a whole, and again, you know, as the heading and the ultimate habeas relief request suggests, this is a habeas statement. And I do just want to add one other point. You know, this was pled and briefed at a time when it was clear that 1983 was an available avenue for a true protocol challenge. You know, this comes a few years after Nelson and Hill. So that avenue was clearly available to Mr. Seeley at that time if this was truly a really a protocol challenge. And so I think that is important. And, again, I think the fact ultimately that the relief requested is habeas relief and, you know, the framing of the claim puts it kind of squarely in the realm of habeas is important. What do we do, though, with, I mean, do we defer at all to the district court's understanding characterization of the pleading at all? Because, I don't know, like I'm not really sure we are better situated to make sense of this district court pleading than the district court was itself. And, you know, the district court seems to have said, well, I don't know, there's a lot going on here. But on balance, I think this is a protocols and procedures challenge and not a frontal assault on execution challenge, which I think is frankly like not an unfair reading of this pleading. You might not think it's the best reading of the pleading, but it's not an unfair reading of the pleading. So I think, I mean, as an instrument, I think it ignores kind of the clear styling and ultimate requested relief, which, again, is what NAMS really tells us to train our attention to. I will say that because this was a subject matter denial jurisdiction, this court's review is de novo. So I don't think we need to defer to anything. And if I could just make one point to take us back a little bit to the rule 60B argument that the warden's counsel emphasized, certainly in their brief to this court. As an instrument, I think that argument is waived because they didn't raise it below in the district court. But I also think kind of more fundamentally, the reason that we didn't dial it as a rule 60B and the reason that the district court didn't understand it to be a 60B is because it's not a 60B. 60B speaks to a final order. And that's not what we have here, at least as to this claim. And I think this is where Martina Villarreal is, Stuart versus Martina Villarreal, is particularly instructive. There, the petitioner returned to federal court and moved to reopen, didn't file a 60B. And ultimately, when the Supreme Court looked back and assessed the claim there, they see there was only one application. That's at 523 U.S. 643. And in Panetti, when Justice Thomas, in defense, is characterizing the claim, he refers to it as a continuation of the first application. And so I think that, in fairness, right, in Nance, in our Nance, the piece of our Nance that I think may well survive the Supreme Court's Nance, we said Martina Villarreal and Panetti are sort of like that's a Ford-specific thing, right? So Martina Villarreal certainly is Ford-specific. Or let me take a step back. Panetti may be Ford-specific. I think Martina Villarreal not so much, especially because Flack versus McDaniel, which comes two years later, in essence, reaffirms that rule into a slightly different context. And so I think the rule of Martina Villarreal, which I think survives and should apply to our case, and I think it's that 645 of Martina Villarreal, is it looked at whether or not there was an adjudication. So that piece, I think, survived. Whether or not, as in Martina Villarreal, it was because the Ford claim was dismissed as premature, or whether, as in, you know, Flack versus McDaniel, it was unadjudicated because there was exhaustion issues. I think the fundamental issue and what puts this kind of squarely in the realm of Martina Villarreal is here there was no adjudication. And ultimately, you know, our request is narrow. That's all we're asking for is we simply are asking for an adjudication of the Tavius claim, to which Mr. Seeley is entitled under Martina Villarreal. Can I ask you another question about Martina Villarreal, Flack, and Gonzalez sort of together? Are Martina Villarreal and Flack, like their own track, and then there's a Gonzalez track, or are those all really part of the same thing where you sort of haven't had an adjudication on the merits, and so we're not going to deem this thing, whatever you want to call it, second or successes? Gonzalez says what we have before us is a 60B. Now we've got to decide, is that second or successes? Well, we say no where there has been no adjudication on the merits. Flack and Martina Villarreal aren't sort of in so many words about 60B. They're just about some other motion to reopen, but they're kind of getting at the same thing. Like have you had an adjudication on the merits of your claim? So are they all kind of like part and parcel of the same thing, or are there like two different tracks, one of which is like a 60B specific track, that's Gonzalez, the other of which is this other track? They seem to be like similar to me, but Gonzalez doesn't seem to draw on Martina Villarreal and Flack, and I'm not quite sure why. I think you're right. It's not identical tracks. They're certainly similar tracks, and right, because Gonzalez seems to kind of dive more deeply into the specific contours of what exactly is a 60B and its significance and relevance to habeas. I think to the extent it's different, it's less significant to us, and that's certainly why in our briefing we focused on, in particular, Martina Villarreal and also Flack. So, yes, I think it's the answer. Let me ask you one last question about this, and then I'll zip it for a little bit. I mean, you've got to have some vehicle, right? So if this thing that you filed wasn't a 60B, what is it, and what's the rule that provides the justification for the filing? So that is what I was trying to lean on on Martina Villarreal. There is only one application here, and again, the language from Justice Thompson's defense in Panetti, this is simply a continuation of the first application. I mean, I think in essence, we're just sitting in the district court waiting for the ruling, which we never got on that claim, even though the kind of rest of the train has left the station. We're still waiting for that. So I guess what I mean, like as a matter of the Federal Rules of Civil Procedure, which apply by default to habeas proceedings, when you say in your pleading, pursuant to Federal Rules of Civil Procedure blank, movement hereby, like what is the thing? Like what's the vehicle? I don't know. Is it like Rule 15? I have no idea. I'll give you one possibility. Sure. If Nance and the Supreme Court had come out the other way, you may style it as a motion to alter an amendment on the ground that the district court refused to address your claim because it thought it was cognizable only in 1983. The Supreme Court now, if Nance had gone the other way, says in cases where you're really trying to prevent your execution, it's a habeas claim. And you would have told the district court, listen, Nance has validated what we thought all along. You told us we were on the 1983 side of the divide, but we're on the habeas side. So please adjudicate the claim, something you didn't do in the first instance. I think you're right. I mean, we think Nance kind of clarifies the line in a helpful way for us, regardless of how it came out, including this way. But right. So I think, you know, in terms of the specific federal rule that we need to rely on, I don't know that there is one. I think, you know, we're sitting in federal court waiting for the adjudication to which we're due, to which we're entitled. And so whether it's dialed as a motion to reopen or something else, I think the district court is required to adjudicate it. And, again, I think, you know, whether it's Martina Villarreal, where, again, they just moved to reopen, or Slack, where you're coming back to federal court after exhausting in state remedies, I don't know that there's a specific rule that you need to rely on necessarily. Y'all need to respectfully, all district court, you need to adjudicate this claim. And so I don't think it's 60-B, and I don't know that there needs to be any specific magic words. I think it's just that we're here and you need to reopen. Let me go back to where we started. Sure. And maybe this will help me at least. If you're right that the district court has subject matter jurisdiction to consider this as a habeas claim, so let's look ahead and assume that you win on the merits. How does the district court frame the grant of habeas relief? The grant of habeas relief is that because of whatever we've proven. No, no, no. The state of Georgia is blank. Fill in the blank. The state of Georgia is prohibited from executing Mr. Seeley period full-time. Period full-time, correct. No matter what. That would be the habeas relief. Even if Georgia comes up with a new execution protocol with something completely different than lethal injection. So I think the way it's planned. The habeas order then converts his death sentence into a life sentence? Correct, yes. So it's not full stop. Because you're not giving the estate an option of doing anything, right? Normally, for example, in cases where an ineffectiveness claim is granted at the penalty phase, a habeas order normally gives the state an option. It says you shall provide Mr. or Ms. X with a new sentencing hearing within, you know, six months or whatever. And if you don't do that and there are no further appellate proceedings, you shall convert the sentence of death to a sentence of life. Here, I hear you saying there's no option to the state of doing anything. I mean, the request as it was briefed is to vacate the death sentence. I don't want to put words in your mouth, but you're really attacking. What may help you in this case may hurt you in the end. Because if you're able to squeeze in through, you know, the eye of the needle here as a habeas claim, then your position on the merits has to be that no matter what, Georgia execution by lethal injection constitutes clear, I mean, cruel and unusual punishment under the Eighth Amendment under any and all circumstances. I mean, I think you're right, Your Honor. And that's a claim that you're willing to try to prove? Absolutely. If not protocol is being applied inappropriately, not that Georgia has had, in your words, missteps in the way that it's applied the protocol, none of that. Is your contention that lethal injection in and of itself is cruel and unusual punishment? Or is it Georgia lethal injection? I think that is what's important here is we're seeking to take the execution out of the state's control. It's not a challenge to a method in particular. It's a challenge to Georgia's ability to constitutionally implement the death sentence. And that doesn't seem – if Georgia tomorrow changed the protocol back to electrocution, and the Supreme Court held ages ago that there's generally no ex post facto problem if a state changes the method of execution after a crime has been committed. Your position is that your client could not be executed by the new protocol? In short, yes. And I think that that would be something that should be fully aired and briefed and that should be decided on a full record in the first – I just have to say, I just don't – to the extent that is your claim, which is I think Judge Jordan is quite right, post-Nance, that has to be your claim. If you want to make this a habeas, that has to be your claim. But there's nothing in these pleadings that would suggest that your claim is an outright ban on execution full stop. I mean, this is, at its very broadest, an attack on lethal injection as a mode of execution, but not execution per se. So I think that that is where it's important to parse out that, while it details specific instances with protocols, with multiple protocols, within the kind of lethal injection context, because that is, frankly, the context that Jordan has been operating in for quite some time, but it does go beyond a protocol-specific challenge. But do you think that there's any plausible reading of the pleading that goes beyond lethal injection? Yes. Really? I mean, like, other than the prayer for relief that just says, give me habeas relief from an unconstitutional sentence, what else in the pleadings suggests that there's anything about this case that's not related to lethal injection? So I think even beyond just the final prayer for relief itself, the kind of buildup to that is that it notes George's recent history has proven that it's incapable of administering a death penalty. And that recent history, read for all it's worth, is really just a fumbling and bumbling of lethal injection procedures. Like, so to Judge Jordan's question about electrocution or the gas chamber or the Dr. Kevorkian pill or whatever it is, there's nothing in these pleadings that assails those. So two things. First is I think the pleadings are just more than a fumbling or bumbling. I think there's illegal importation and fraudulent prescriptions that are alleged in there. So I think it's beyond – it takes into – and even in Bucklew, there's distinctions between – and sorry, I'm way past the time. In Bucklew, there's kind of a subjective risk kind of method of execution, and then there's an intentional inflection theory. And so I think there are allegations that go beyond fumbling and bumbling. And we've also, from the moment that we moved to reopen, we've requested the opportunity to amend, to include the many factual and legal developments over what's now been almost a decade. And so I think all of that is something that – Which would be what, though? What in addition would you allege if you had the opportunity? So, I mean, again, part of this is we'd like to develop the record more, but, you know, this is all – even predates the Kelly-Ginson-Danner botch, and this predates a number of other executions where, you know, Robert Butts, when he was executed, says this burns. And so, you know, we would like to develop a record, frankly, but this predates a lot of additional issues that we would suggest go to this kind of broader habeas challenge of – Beyond legal injection, though? To the kind of intent and misconduct of the state of Georgia. So that, again, I'm trying to parse that out, but it's not a claim or protocol or a method or protocol necessarily. I think what makes it habeas is that it's seeking to take it out of, you know, to use the words of Nance, take it out of the control of the state, and that's kind of what distinguishes this between, you know, a run-of-the-mill protocol or procedures challenge, and this is kind of taking issue with Georgia's ability to implement the death sentence at all. All right. We've given you all the time for rebuttal, Mr. Potemkin. Thank you, Your Honor. Mr. Petran. Thank you, Your Honor. May it please the Court. I want to start with Gonzales v. Crosby because we got a little bit into that, but we didn't really get into the main point, which is that Gonzales v. Crosby is not just about Rule 60B motions. It very clearly says we're not interested in the label that a petitioner puts on his attempt to essentially sneak a second or successive application by. What we want to know is, does this filing have a claim in it of some sort? And the way that we're going to figure that out is, well, does it attack a previous decision on the merits? And then, now many times, the distinction between a merits and a non-merits decision is very difficult to parse. But Gonzales gives us the definition in the habeas context. It says that a decision is on the merits if it determines that there exists or do not exist grounds entitling the petitioner to habeas corpus relief. Now here, but in fairness, it goes on. You're reading out of footnote 4. Entitling a petitioner to habeas corpus relief under 28 U.S.C. 2254 A and D. And if you go and look at those, A, that's sort of the famous piece of it that says, in violation of the Constitution, laws and treaties of the United States. D is, of course, the sort of contrary to unreasonable application of clearly established federal law. Both of those to me seem to be like merits in kind of a colloquial, we understand the substance of the underlying claim kind of way, but not this cognizability thing that we've been talking about. Well, Your Honor, I actually think, and this is going a little bit outside of the Gonzales definition, but at least analogously I think it helps. In the vast majority of circumstances where you say a claim is not cognizable because, for instance, you failed to plead the elements of the cause of action, courts call that a decision on the merits. That's a 12B6 style decision. So Brownback makes that clear. Steele Co. makes that clear. This Court has said the same thing about 12B6 style. I didn't actually plead my claim the way I was supposed to, and so it got dismissed, and that's what happened here. See, I guess I tend to think of these things as slightly different, and I don't mean to just be parsing terms here, but to fail to state a cause of action, agree. That's 12B6. You had a contract claim. You forgot to mention mutual assent, whatever. But to not have a cause of action seems to me different. When I think about cognizability, I think about do you actually have a cause of action. So think, for instance, about the most frivolous, imaginable prisoner suit under Section 1983. It's cruel and unusual punishment not to serve me filet mignon for dinner every night. That claim fails to state a claim in a 12B6 kind of way, but there is a cause of action for that. It's called Section 1983. So that's like a cognizable claim on Section 1983. It's just a loser. So Your Honor, I don't see a distinction there, and I'll use an example to try to get this across. Suppose that a habeas petitioner says I have an ineffective assistance of counsel claim. And I think that the deficient performance was my counsel wore, again, to make it kind of obvious, wore the wrong color suit or something like this to court. That is no different than saying, well, you just failed to allege deficient performance. But that's not a claim. There is no ineffective assistance of counsel claim for someone who just shows up in the wrong color suit. You're wrong. You're right at the end of the day. But you're wrong in the way the court goes about adjudicating that. And I think in the way Judge Newsom is trying to get at it, I mean, I don't want to put words in his mouth, but in the case where the claim is that your lawyer wore the wrong colored suit, a habeas court has jurisdiction to entertain that claim because the claim is that that violates your right to effective assistance of counsel, right? Absolutely. But the ruling is on the merits, that's a frivolous habeas claim. You lose. You're out. Res judicata. Anything else you file later, second or successive. But it's hard for me to get my head around a dismissal for lack of subject matter jurisdiction being second or successive. How would this case have played out in your mind if Nance and the Supreme Court had gone the other way and Mr. Seeley returned to the district court and said, listen, I told you from the beginning this was a habeas claim. You told me 1983 I told you habeas. You dismissed. Now Nance says it's habeas. Please adjudicate this claim. Would you say second or successive? Yes, Your Honor, because the underlying – And you and I just disagreed. So the underlying, whether you're right or not doesn't determine whether it's the merits. It's the right or wrong on subject matter jurisdiction, not the merits. In my hypothetical, nobody has said you lose because your claim isn't sufficient enough. You're in the wrong bucket of the court system. Your Honor, I think you're assuming that this was a subject matter jurisdiction decision, and I want to make two points about that. The first is, even if we were to assume that, Gonzales v. Crosby gives us this definition for merits, and it may or may not overlap with jurisdiction. In Brownback, for instance, the Supreme Court held that a merits decision was also jurisdictional because the elements of the claim just happened to be jurisdictional. So I don't think that it being jurisdictional would end the discussion. But also, the district court didn't say this was jurisdictional, and I don't think it is jurisdictional. What it said was that it was denied. Because he's not actually challenging his custody because his claim is just about legal injection. So that fails what you need to prove. Habeas requires, in the broad scheme of things, essentially two things. And this is from 2254A, that you be in custody in violation of federal law, constitutional laws of the United States. No one doubts that he's in custody. So the court has jurisdiction in that sense. So the question is just, is he in custody in violation of federal law? And his claim does not make that out. He claims that he is. Even today he's asserting that he is. But he simply isn't. And that's a way of saying there are no grounds entitling you to habeas relief. That is the exact same thing. As if the court were to examine the question a little bit further and say, look, ultimately your legal theory just failed. It doesn't get you where you want to go. That's what this is. His legal theory is that he is entitled to habeas relief because of problems with legal injection. When the district court says, no, you're not. If that's the decision on the merits, had he immediately gone into federal court and filed in 1983, you could have successfully pled restitutacata? No. No, Your Honor. But the reason for that is because there is no restitutacata in habeas as an underlying matter. Or another habeas claim. That's the old habeas rule, that restitutacata, because habeas was originally seen as jurisdictional in the sense of the jailer having jurisdiction over you. That's why habeas adjudication wasn't seen as restitutacata for a second or successive. And then courts came up with these different common law concepts like abuse of the wrist, second or successive, et cetera. But the reason you wouldn't be able to plead restitutacata in a subsequent 1983 action, I submit, is that the first one was not on the merits. No, Your Honor. And this is where the Gonzales definition I think is very clear. It says that the question is whether there are grounds for habeas corpus relief. The fact that you might be able to go to some other court and an entire different area of the law, entirely different cause of action, and get some sort of different relief doesn't mean that your habeas petition wasn't once and for all rejected. And I think if you look even further in Gonzales, and you look at the examples that it uses of situations where it would not be on the merits, and it's in fact just procedural, it gives three. And those are procedural default, exhaustion, and statute of limitations. In each one of those examples, there is something wholly separate from whether you could ever get relief on this habeas claim in habeas that is preventing it. So you maybe could have gotten habeas relief, but you were too late. Or you maybe could have gotten habeas relief, but you didn't exhaust and you were too early. Or you maybe could have gotten habeas relief, but there's this procedural default problem. Never, not ever could you get habeas relief. That is the holding of the district court. Those are completely outside of the realm of the subject matter of the claim. Procedural default cares not what the claim is or whether it's sufficient on its own. Exhaustion doesn't either. And what's the third one you mentioned? The third was statute of limitations. Same thing. None of those care about the merits of your claim. This is my point. This particular claim is different. You cannot understand why this claim was dismissed without understanding the claim. It had to be adjudicated as a claim. This was not something where the district court said, for instance, I don't even need to look at the claim. I just know you didn't exhaust it. This was something where the court did look at the claim and decided this can never get you habeas relief. There are no grounds here for habeas relief. But isn't it a little bit different when a court says not so much this claim but this type of claim, like you've tried to put this type of claim in the wrong bucket? So it just seems to me – and maybe I'm being too simplistic about this. I guess I tend to think – Judge Jordan was asking earlier about sort of the distinction between a subject matter jurisdictional ruling and a merits ruling. I guess I tend to think of there being sort of like three tiers. There's something that's like true subject matter jurisdiction at one end of the spectrum. The other end of the spectrum is the merits, sort of the guts of this particular constitutional argument. And then in the middle somewhere is what I'll call cognizability, which is like which bucket does this go in? This type of thing, does it go in the habeas bucket or the 1983 bucket? That somewhere is like suspended between jurisdiction and a true merits determination. Am I just thinking about that the wrong way? Are cognizability and the merits necessarily fused, or are they fused in your mind uniquely in this circumstance? So I don't think it's unique to this circumstance, but I do think that Gonzales makes it clear in this circumstance that noncognizability is a way of saying you're not entitled to habeas relief. There's nothing here that will give you habeas relief, and that's a merits decision. But I think even outside of this context, that's actually the ordinary way that we would think about it. And so if you say you lack a cause of action, for instance, that's not a jurisdictional question. It's also not necessarily the merits, right? Well, but this court has said on numerous occasions that a 12b6 dismissal, which is where the no cause of action is going to come in, is on the merits. And in Steele Co., this is what the Supreme Court said in Steele Co. was that the question of whether or not a claim falls within a cause of action is not jurisdictional. It really goes to whether there's a cause of action and to the merits. And I think that that is more obvious here than anywhere else because we have Gonzales telling us it's about the grounds for habeas relief, and there are none here. And you can only figure that by examining and deciding the claim. And once you've done that, you know this would never work in habeas. That's the holding. In fact, we know that if Mance had come out the other way, Mr. Steele could have filed a true Rule 60b motion. No, that's the point of Gonzales v. Crosby is that if you really are attacking this thing on the merits, if you're trying to raise the same claim again, it's because of application. Because of a mistake in the first go-around. In other words, the district court incorrectly thought that this was on the 1983 side. But this is the whole point of the Techner Successive Bar is that they're always going to be saying that the district court made a mistake. The district court erred somehow, and so I want you to do it again. I mean, that's always going to be the claim. But isn't a true Rule 60b something that goes back to what the district court originally did? It's a fundamental defect in the proceeding of the claims that were before it the first time around? This is the distinction that Gonzales v. Crosby draws. For example, judge was bribed. Same claim, re-adjudicate my claim because the judge was bribed. That is not a second or successive application in Gonzales. Because there was a fundamental defect in the proceeding, right? But in the procedure, not in the actual decision of the claim itself. You're not saying, well, you got the claim wrong, and I just want you to redo the claim because there's some sort of new law. I mean, just to take a step back, the ordinary rule is you don't get to just attack a previously decided. Like, let's make it a claim that everyone would admit would be on the merits. So he says, to go back to my suit example, my lawyer was wearing the wrong color suit. And to continue into bizarro world, after he loses, the Supreme Court comes up with a decision that says, yeah, actually that is an effective decision. That's deficient performance. It's still a second or successive petition. It doesn't matter that the Supreme Court just essentially changed the case law on it. And, in fact, the whole point of a second or successive bar is to avoid that sort of circumstance. That's why you have these very narrow situations where you can even apply for a second or successive petition involving, for instance, a change to constitutional law of a certain variety and so forth. But that's still a second or successive application. It's just one where maybe you could convince a court that you deserve a second or successive one. But it definitely is. So in this case, whether the district court was right or wrong, it determines that Seeley is not entitled to habeas relief. It was not simply a question of, well, if you had done something slightly differently, you could get habeas relief. It was a question of, this is not a claim that belongs in habeas at all. And I think that that lines up exactly with the intuition of not only Gonzalez versus Crosby, but what the second or successive bar is there to stop in the first place. All Seeley is trying to do here is relitigate the same claim. He's not, again, trying to get rid of some procedural bar to this claim. He wants to relitigate the same issue that was already decided. And so I think that when you look at the way that Gonzalez versus Crosby defines on the merits, when you look at the procedural examples it pointed to, and when you look at the fact that ordinarily courts treat cause of action elements, pleading requirements of this sort as merits-based decisions, I think this has to be understood as a decision on the merits. Can I ask you a question? So in your brief you cited a passage out of the Restatement Burst of Judgments that says, let me see, I think I've got it written down here, when a judgment determines that the plaintiff has no cause of action, it is on the merits. So that the same section goes on in the very next sentence, but if the court determines only that the plaintiff is not entitled to review, sorry, to recover in a particular action, it's not on the merits. I'm not quite sure what that means, frankly. But then subsequently, and this is what I want to get your perspective on, it says where there is a judgment for the defendant on the ground that the plaintiff sued in the wrong form of action, the judgment is not on the merits. And I get it that this is like a throwback to like a sumps it and trespass and on the case and whatever, but is like the divide between habeas and 1983 not sort of the modern equivalent of that sort of what we view as like nonsense? I don't think it is, Your Honor, and I would have to go back to remind myself of that particular line. But I recall taking that as more of you're in the wrong forum, but you could bring the same claim somewhere else. But I'd like to point out that by definition, a 1983 claim and a habeas claim are never the same claim. I mean this is what Heck all the way through Nance makes clear. By definition, these are different claims. He failed in a habeas claim. Maybe he could have gotten a 1983 claim, but that's a whole distinct claim. And the reason for it is that they're going, as the Supreme Court has made clear, is they're going at different things. One is this kind of conditions of confinement style thing that really isn't challenging your custody, and the other is, in fact, challenging your custody. And the decision here was this challenge to your custody fails. You do not have the right to challenge your custody in this way because, in actuality, when we get to the end of the day, when we get all the way through your claim, it's necessarily going to fail because it only challenges the lethal injection protocol. And without trying to draw pretty arbitrary lines, I don't see that any different from any other decision that your claim fails at the outset because, on the law, it just doesn't get you where you want to go. And I think that lines up very well with Gonzales v. Crosby, and its definition at the whole point is whether there are grounds for habeas corpus relief. Not some other kind of relief, not some other kind of cause of action, but habeas corpus relief specifically. And on the other side, it works the same way, by the way. Heck v. Humphrey made it clear that if you file a 1983 action that purports to invalidate or would invalidate somehow imply the invalidity of your sentence. What Justice Scalia said is, we're not just saying that there's some sort of equitable doctrine barring you from doing that. We're saying, actually, you don't have a cause of action to do that. There is no cause of action to do that, and I think that that is a merits determination, and I think on the other side— It's not. Well, I think it is, Your Honor. Heck v. Humphrey is a dismissal without prejudice. Well, so this is the main difference between, I think, habeas in general and civil actions in general. So if you dismiss something without prejudice in a civil action, the point is that you can amend your claim somehow to make it work, and then eventually, if you really can't make it work, if you just again and again and again are failing, eventually it gets dismissed with prejudice. In habeas, that's not really how it works, right? You either get leave to amend or you don't get leave to amend, but there is no prejudice. As Your Honor noted, there were equitable doctrines like abuse of the writ, and now we have the second or successive bar, but that ordinary prejudice analysis doesn't really apply, and so I think that's why we have to really cut— You're the one who mentioned heck, and I'm not sure that heck fits, because if you dismiss a civil lawsuit under 1983 and you do so correctly on heck grounds, that's without prejudice, because if you're able to overturn, if you have a parallel habeas proceeding going on and you ultimately vacate your conviction, you can then file. So, Your Honor, you're absolutely right, and it's not a problem. Yes, you're absolutely right in certain circumstances that it's correct, and I actually think that that actually demonstrates the point I was making earlier with the exceptions that Gonzalez lays out. That is the almost exact inverse of, say, the exhaustion point, right? So in that circumstance, I would probably agree with you it's not necessarily on the merits, because isn't the court looking at the meat of your pleading and saying you can't get relief, because if I give you relief, I'm really questioning the validity of your conviction? Well, no. To be clear, they have to determine that. They don't necessarily have to determine the rest of your claim. And, I mean, in some of these cases, there's something rather tangential that is going to imply the invalidity, but I do think that it is essentially directly analogous to this exhaustion point that I was making before. It's not that you've addressed my claim per se. You've just said, well, you need to exhaust it, and Gonzalez says that's not on the merits, but here, where there's nothing left to be done, and there is no universe. So in this way, it is different, right, from a Section 1983 claim in the Tech Parts. In this situation, there is no universe in which anything could change, in which you could do anything to undo this particular decision. Now, of course, you could change the law or something like that, and then you could see if maybe you could apply that retroactively, but under the law as it stands, there's nothing keeping you from adjudicating this claim except for the fact that it failed. That's the only thing that's keeping you from granting relief. In the time you have left, let's switch to the ground that the district court provided. Can I ask one question before we switch? Of course. This is – I'm at risk here of making a fool of myself and trying to think out loud, but in terms of cognizability, how would we analogize to this rule that you learn about in Fed court, Stone v. Powell, Fourth Amendment claims simply aren't cognizable in habeas? Is that a merits determination? Yes, I absolutely think it is because what – So the court never – the court basically says I see Fourth Amendment on the face of your pleading and go away. No. Yes, so I probably think that's a merits determination because what it's saying is there are no grounds entitling you to habeas relief. So that's the Gonzales v. Crosby point. And I apologize off the top of my head. I can't remember which decision it is, but Justice Scalia has a concurrence in one of those decisions where he says, and just to be clear, this isn't a jurisdictional decision. This is just a decision by this court that we're going to reject those claims because they are not the kind of claims that should entitle you to habeas relief. Yeah, if I could give another example. Granted, this is in the unpublished – it's an unpublished – mostly unpublished decisions, but this court regularly rejects freestanding actual innocence claims in noncapital cases and says they're noncognizable, and it affirms district courts that deny them. It doesn't say that was a subject matter jurisdiction issue. Now, granted, these are unpublished decisions. I'm not saying we're relying on them necessarily, but I think it goes to sort of the general sense of the court that when a claim just isn't the kind of claim you can bring in habeas. It just fails, and that's a merits decision. So I guess – maybe I'm just being stubborn here, but I at least think that I reject this sort of false binary between jurisdiction on the one hand and everything else's merits on the other hand. Like I think there is this middle way of sort of like cognizability, cause of action stuff that sort of exists in between – or might exist between the two. So I actually agree entirely with that, Judge Newsom, and in fact in two ways. First, I don't think that the Venn diagram of jurisdiction and merits is totally separate. I think the Supreme Court has made clear there are examples where they overlap. And also, I do think there are procedural rulings that aren't necessarily merits rulings. And to give three examples in this context, statute of limitations, exhaustion, and procedural default. But in all of those circumstances, I think in every single one – and I'd be hard-pressed to think of a way around this sort of jurisdiction. Every single one. The idea is if you fix something, you could address this claim and rule on it. Here, there's nothing else to fix. The ruling on the claim is addressing it. That's statute of limitations. Oh, no, absolutely. To be clear, as a practical matter, it might be too late. But the point is if you had brought it a year earlier, we could have ruled on it. But that's not the fixing of the pleading. That's a fixing of the past. Oh, no, but I'm not saying it's a matter of fixing the pleading. Exhaustion, for instance, isn't the pleading matter. You have to go do it. You have to go exhaust. My point is just there's something you could do, at least in the abstract, whether it's avoiding the procedural default or exhausting it or doing it within the time period, that would mean that, at least in the abstract, this claim can entitle you to habeas relief in some circumstance. You said you can't. You'd be hard-pressed to think of an example, so let me try to give you one. A person gets convicted, goes on direct appeal. The day after the state Supreme Court affirms, the defendant goes into federal district court, files a single ineffectiveness claim for his counsel's failure to put on an alibi defense. Federal district court, a week later after asking for supplemental briefing, dismisses for lack of exhaustion. Merits? No, not in that case. You said exhaustion is merits. No, no, no, no, no. Exhaustion is not the merits. To be clear, statute of limitations, exhaustion, and procedural default are not the merits. Precisely because — Statute of limitations is the merits. No, no. It's a merits-based ruling. Well, actually, Your Honor, there are — It counts as a merits-based ruling. Well, in Gonzales v. Crosby, the opinion specifically says that it's not in this context. So that's why I'm trying to reason from the information that the court gave us. And because the statute of limitations is an affirmative defense, I think that that is a little squishy, I admit, in other civil contexts. You're saying that a statute of limitations dismissal in a habeas case is not on the merits? Not for this being the purpose. So you can file again the day after, and it won't be a second or successive? Oh, if you file — To be clear, if you file some sort of motion trying to undo the statute of limitations ruling — No, you just file the same petition again. No, I think — well, I think if you're being open about the fact that this is just — To be clear, Gonzales v. Crosby is about a situation where you're claiming, I'm not filing a new petition with new claims. I'm not talking about Gonzales v. Crosby. You file a habeas petition. District court dismisses it as untimely. That becomes a final judgment. Yes. Is that on the merits? Yes, the judgment as a whole is on the merits. Of course it is. Yes, absolutely. And so another habeas petition with the same or different claims is a second or successive. Absolutely. District court dismisses a claim for failure to exhaust. Mm-hmm. Okay? The time for you to get back into state court and exhaust is gone. You file a second habeas petition. Second or successive? Yes. So every example you've given goes both ways. No, Your Honor, the difference is in those cases — So here's why the merits discussion matters. What Gonzales v. Crosby said is it's an application if it raises one or more claims. So the reason that we even care about merits is whether this application, whatever you call it, motion, application, whatever, raises one or more claims. In the circumstances that you're talking about, what has happened is that your petition was finally adjudicated, and then you came in with a new petition that raises a claim. Whatever the underlying claim is, you're clearly raising that claim. The reason that in this context where you're trying to reopen a judgment or redo a judgment or whatever you happen to call the thing, that statute of limitations, exhaustion, and procedural defaults are different, is if what you're saying is I want you to reconsider that ruling, not the underlying claim, just that ruling. Because once I get rid of that ruling, we can just get to my original first petition's claim. Then the little part of the judgment that just said this was procedurally defaulted, that's not on the merits for this purposes. And that's not me speaking. That's Gonzalez v. Crosby saying that, and I'm saying from that we can learn what is on the merits and what isn't. Now in the minute and 45 that I have left. No, we'll give you a couple of more minutes. Let's talk about the ground on which the district court rules. Yes. I think this is about as open and shut of a case on this as you're going to have. First of all, at the very first level, this petition on almost every single page makes clear it is attacking the particular lethal injection protocol of Georgia's protocol. And, in fact, it specifically distinguishes other states' protocols like Bayes in Kentucky saying, no, Georgia does it differently and that's problematic. It has been known for two decades that's not a habeas claim. Even if we decide to read it more broadly, even if we kind of give it every friendly reading you possibly can and say, well, actually, this is really a challenge to lethal injection generally, just no lethal injection at all. That's literally NANST. And NANST told us that's a Section 1983 claim. So let me ask you the same question that I asked Mr. Potek. So is your reading of NANST that anything short of a claim that you may not execute me at all under any circumstances is 1983? Yes, with one small caveat, Your Honor. So what NANST said was that it has to invalidate your sentence. In the circumstance that, as far as I'm aware, has not actually happened anywhere, but in the circumstance where a state actually makes the method of execution part of the sentence and says you have to be resentenced to be executed some other way. So not only is lethal injection our method, but it is actually part of the judgment, part of the verdict, part of everything. And if you are stopped from doing that, you can't execute them at all without resentencing. I can't even say it's rare. I don't think it exists because I don't think any state does that. But outside of that, yes, I don't think there's any room anymore for a claim to challenge a method of execution in habeas because one of two things has to be true. But in the example you just gave, the statutory scheme, the hypothetical statutory scheme you posited may not exist. Doesn't every capital judgment say, and you shall be put to death by, and then lay out the state's protocol? Yes, generally speaking, but what both, certainly in Georgia and the United States Supreme Court have said, is that it doesn't require resentencing, like any meaningful invalidation of your sentence in order to switch to something else. But I don't want to get hung up on that. I just wanted to give a precise understanding of where I think we stand, setting aside that very minor possible hypothetical exception. In any event, that's not the circumstance. No, not even close. And in the circumstances here, setting aside whatever he said in his petition, I don't really think there's any way to read this petition as anything other than a challenge to particular lethal injection protocols. But one of two things has to be true. Either Steele is challenging the death by all methods of execution. You can't execute me by any method at all. In which case, under Bayes, Glossop, and Butler, he cannot succeed because we know you need an alternative method of execution in order to succeed on a claim like this. Or he's not covering the universe. He isn't challenging every imaginable method. He's not challenging, for instance, a method where I take a pill and I just go to sleep and then I die and it's not working. If he's doing that, well, then that's not a habeas claim anymore. So it's not just that he failed to identify, or sorry, failed to read his petition correctly. It's that as a logical matter, there is no way for him to keep this claim in habeas without it being, without it failing under Bayes, Glossop, and Butler. Are there no further questions? So you, aside from the little wrinkle that you mentioned, the only way you think under Nance to file a true habeas claim regarding execution is to argue that execution in and of itself is cruel and unusual punishment? Well, you could, of course, argue that, you know, my sentence was imposed for bad, you know, illegally. But yes, if you're just challenging methods, if you're saying- No, no, but that wouldn't be an attack on the method itself. Exactly. There is no, without, outside of that very narrow, and I think non-existent exempt, you know, different situation that I was talking about, I do not see how it could be that you could successfully challenge a method of execution in habeas given Nance, given the Supreme Court's Nance. Because what they said was, it does not matter whether the state has authorized it or not. If it exists out there and you identify this alternative method of execution, that's a 1983 claim, not a habeas claim. Which means that in order to succeed on your claim, because remember, you have to plead an alternative method of execution to succeed, you're always going to be taking yourself out of habeas. Right. Thank you very much. Thank you, Nance. Okay, there's just a few points I want to make first and most urgently. Section 2254A is jurisdictional. Period. Full stop. I think the warden's council acknowledged that the status requirement in 2254A would be jurisdictional, but that would be a separate issue.   First, I want to make a few points. I think it's a strange way to read the statute that just the first part of 2254A is jurisdictional and the substance requirement is not also jurisdictional. And I think, you know, for starters, well, not just positive, one of the leading treatises on habeas, Hurst and Liebman is absolutely unequivocal on this point. I think we include the number of libraries. There is an all caps chapter heading, which says subject matter jurisdiction colon cognizable claims. And so I think at least as far as 2254A, cognizability is a subject matter jurisdiction determination. And it's not just Hurst and Liebman. The Supreme Court has been clear in Malin versus Cook. They unequivocally describe that 2254A sets the federal jurisdictional bounds for federal habeas review. In Withrow versus Williams, Justice Scalia in a separate writing is also very clear. And this court has been very clear as well as recently as a few months ago in Clement versus Florida, I believe. This court was clearly held that 2254A establishes jurisdictional prerequisites. And I think just one more beat on the warden's analogy to ineffective assistance of counsel, which I think kind of proves our point. You know, counsel didn't get up here and say that they could waive or concede that a person is in custody or that a court could review a claim that wasn't addressing the validity of their conviction or sentence because, of course, they can't waive or consent to that. And the reason that is so is because those are jurisdictional requirements, unlike a portion of an ineffective assistance of counsel claim where, of course, that happens all the time. And, again, 2254A is jurisdictional. Can I ask you this question just while we're on this topic? Yes. Same question I asked Mr. Petrani. Am I wrong to think about the world and sort of this world in buckets of three instead of buckets of two? Instead of there just being, like, pure jurisdiction and pure merit, again, I tend to think that there are pure jurisdictional issues. Maybe 2254A is one of those. Maybe it's not. We can figure that out. Pure merit, that's the prejudice piece of your IAC claim, right? And then in the middle, to me, is, like, is there a vehicle? Like, is there a cause of action? Is there a vehicle? Is there an avenue? Does this kind of claim belong in this bucket? Or do you think also it's just two worlds, not three? For the most part, it's two worlds. And I think there's some confusion because I think cognizability does get thrown around a lot in ways that it maybe shouldn't. And I think, you know, the warden said that freestanding innocence claims are a cognizable issue. I think in our brief, you know, we have from this court, Amadeo, a freestanding claim of actual innocence is an example of that. Under our circuit precedent, it's meritless, but it's still cognizable. So I think even that kind of adds to the confusion that we throw around cognizability a lot in ways that perhaps it shouldn't. Let me ask you this, and this is maybe why I'm hung up on it. But, like, the example I gave of what I'll call, I guess, the most frivolous imaginable conditions of confinement claim where the prisoner says, violates the Eighth Amendment not to serve me filet mignon, there is jurisdiction, section 1331 and 1338 give subject matter jurisdiction over that claim. There is a cause of action. Section 1983 provides a cause of action. That is a loser. So on the merit, that is a loser, but the claim is in some sense cognizable in section 1983. It is recognizable that this kind of claim goes in that kind of bucket. So what is section 1983 cognizability there? It's not jurisdiction. Nobody thinks it's jurisdictional. But is it the merits? Is it, like, the guts of the claim, or is it something different? I think that would be the merits. I mean, that's just a loser. And I think, you know, again, Belle v. Hood. We're just going to let that one hang and see what you say. No, no, no. That's my fault. My apologies. So Belle v. Hood, an old Supreme Court case, says that the only time you dismiss a federal claim for lack of subject matter jurisdiction, when there would generally be that jurisdiction, is for something that is utterly, utterly frivolous. So, I mean, in Judge Newsom's example about the prisoner asking for a certain high-level diet, I could see a district court thinking, that falls on the frivolity side of Belle v. Hood, and I'm dismissing for lack of subject matter jurisdiction. Now, a claim that is weak and fails on the merits falls on the other side, and you do take subject matter jurisdiction, and then you say you fail on the merits. That constitutes a merits adjudication. That's res judicata. So perhaps that claim is so far over the line beyond frivolity that there could be a subject matter jurisdiction line with Belle v. Hood. But I think the point that we're trying to make is, you know, regardless of frivolity or not, 2254, you could have the most meritorious claim possible, but if the petitioner is not presently in custody, or if the petition does not challenge the validity of that custody, the federal habeas court does not have jurisdiction. And so I think that is a point that I urgently want to make, is 2254A is jurisdiction. And then the next point that flows from that. For me, your hardest – your most difficult obstacle here is how to properly characterize your claim. Assuming you're right about that first point, and the point that we talked to Mr. Petrani for a long time about, you're right that the district court didn't explicitly consider some language or some headings in your original claim that talked in broader terms. But like Judge Newsom said, there's a lot – there's some broad language and there's some very specific language tied to both lethal injection and to the carrying out of the protocol. Why is that a cognizable claim on habeas? If you are not trying to shut down your client's execution in the future, full stop. I think that's why – and that's, I think, the main issue that I want to take with the district court's ruling, and particularly in light of NANCE. And I think my reading of NANCE is, again, slightly different from the warden. You know, they focus on the requested relation. And that is ultimately where federal courts need to train their attention to decipher on what side of the line, the 1983 or the habeas line. But really not to the exclusion of everything else going on in a pleading, right? I mean, like I grant you that the prayer for relief here says some version of like, you know, petitioner – writ of habeas corpus to have petitioner released from his unconstitutional sentence of death. But everything else going on in the pleading is about the nitty-gritty of Georgia's lethal injection process. So two things. You know, I don't think NANCE is solving for the problem of, you know, a habeas petitioner bringing a breach of contract claim and then slapping on a and therefore vacate my death sentence and then, aha, it's a habeas claim. But I do think what NANCE is solving for is if you have a coherent claim that requests habeas relief, it is a habeas claim. And here, again, you know, there are many instances, details of specific issues that petitioner takes with varying parts of the statutory scheme, of the protocol, of the procedures. But ultimately the thrust of the claim is that Georgia has shown itself incapable of administering the system. At least administering – back to the questions that Judge Jordan and I were pushing you on earlier. At least – I guess what I should say is at most incapable of capably administering a lethal injection process. To say nothing of other methods of execution. The examples detail the state's missteps and misconduct within the lethal injection context because that was the universe that was in existence at the time and still now. That Mr. Seeley pled and briefed the claim. But, again, the thrust of the claim, I think, goes beyond that. And, again, 1983 attacks the particular method, the procedures. Habeas attacks the state's ability to impose. And the difficulty is here – and look, it's a strange world to me post-NANCE, and I say so scarred having – you know, I'm the guy, right, who lost Nelson v. Campbell 9-0 and launched this entire sort of program of litigation. But it's a strange world now to me, but I think it is the world. The post-NANCE, the Supreme Court seems to have said, unless you intend to tell us that there is no way to execute you at all, then we're just going to consider everything 1983. So, I mean, I think, you know, the line that they've drawn is, I think, the requested relief. And I think, you know, obviously in Nelson and Hill and NANCE, the claims that issue there, the Supreme Court has found that they all ultimately fell on the 1983 side of the divide. But, again, going back to Gomez and Lonchar, it's clear, it's been accepted, uncontroversial that there is a role for Habeas to play in method of execution challenges. And nothing – you know, they don't disavow or overrule – I mean, not that those were holdings in Gomez and Lonchar, but they don't disavow or overrule anything in particular. And I think the language is, you know, they're continuing to clarify that divide. But it's either one or the other, right? Yes, correct. Part of the problem, I know you're advocating only on behalf of your client and you care nothing else about anything else, right? You need to get relief for him and that's the role of a good advocate. But sanctioning what Mr. Seeley is trying to do here long-term is going to cause all sorts of uncertainty. And when someone tries to bring a sort of hybrid claim, like the one that I think you have in this case, then people in Mr. Petrani's position are going to say, you're on the Habeas side of things and you already litigated your Habeas petition four years ago. And although the protocol just came out, you can't litigate it now because it would be second or successive. And they're going to point to the 11th Circus decision and see Lee has support for that proposition. That's one of the strange things about this case, that everybody has reversed roles. I mean, back in my day, these guys always wanted Habeas. You always wanted 1983. And now everybody has reversed roles. That's because you're always trying to prevail in a case. Well, I think that's an interesting point. You know, I think the congressional intent behind EDSA is to channel and funnel these broad attacks on the implementation of that sentence to Habeas. And, you know, the reason the petitioners in all those cases— If it weren't for Nance, that might be a reasonable argument. Well, and the reason the petitioners in most of those other cases wanted it to be in 1983 is because 1983 has significantly less procedural and substantive gatekeeping requirements. And so, you know, this, I don't think there will be a huge— It also prevents the timing issue. Well, you have EDSA statute of limitations, which requires you to file a Habeas petition at a certain time, whatever that time may be. And at that point in time, your challenge to an execution protocol may not be right. But if you're in the Habeas world, once you've filed Habeas and litigated and lost, and if you're still in Habeas, you can't come back. It's over. That's my point. I don't think we have a huge floodgates issue here because this is a rare situation of trying to make this type of claim in Habeas. And it just so happens that Mr. Seeley has met all the difficult procedural and substantive gatekeeping requirements. This was filed timely in a first petition, and because it wasn't adjudicated, there are no second or successive issues. So I think this is kind of a pretty unique situation where kind of by the nature of the claim, he has filed a timely and non-successive Habeas petition. And again, I just want to emphasize that the request here is very narrow. All he is requesting is the adjudication to which he is entitled. And it is a difficult road. He faces a difficult road on remand. And it may ultimately be unsuccessful, but Martinez Villarreal promises him the opportunity to get an adjudication of his Habeas claim, and he didn't receive that. And so we would ask that this court remand back to the district court. Okay. Thank you both very much. It's been helpful. We're in recess for today. All rise.